UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| UNITED STATES OF AMERICA | CRIMINAL ACTION |
| VERSUS | No.: 14-86 |
| JASON PAYNE | SECTION: "J" (1) |

## ORDER & REASONS

Before the Court are three *Motions for Compassionate Release* **(Rec. Doc. 543, 545, 547)** filed by Defendant, Jason Payne, and an opposition thereto (Rec. Doc. 546) filed by the Government. Having considered the motions and legal memoranda, the record, and the applicable law, the Court finds that Defendant's motions should be **DENIED**.

## FACTS AND PROCEDURAL BACKGROUND

On February 4, 2016 Defendant was sentenced by this Court to 140 months imprisonment after pleading guilty to conspiracy to distribute over one kilogram of heroin. (Rec. Doc. 325). Defendant is currently incarcerated at FCI Three Rivers with a projected released date of June 16, 2024. On May 27, 2020, the Court received Defendant's First Compassionate Release Motion (Rec. Doc. 503) seeking relief under 18 U.S.C. § 3582(c)(1)(A). The Court denied the motion as premature because Defendant had failed to exhaust his administrative options.

On July 8, 2020, Defendant mailed his second motion for compassionate release to the Court. (Rec. Doc. 522 at p. 3). Defendant contracted Covid-19 on or

around July 11, 2020, roughly three days after mailing his motion to the Court. (Rec. Doc. 524-1). On August 17, 2020, the Court denied defendant's second motion for compassionate release, noting that defendant "was diagnosed for positive for COVID-19, received regular care, and fully recovered," and therefore, "the care and treatment Defendant [was] receiving while incarcerated is adequate given his underlying conditions." (Rec. Doc. 527 at p. 4).

On November 27, 2020, the Court received Defendant's third motion for compassionate release, followed by two supplemental motions for compassionate release. (Rec. Docs. 543, 545, 547). As with his first two motions, Defendant bases his motions on the risk of COVID-19. In addition, Defendant now alleges that he was diagnosed with a neurofibroma in 2012 and that he suffers from aftereffects due to his prior COVID-19 infection, such as shortness of breath, which resulted in him being prescribed an albuterol inhaler.

## DISCUSSION

As an antecedent matter, it is undisputed that Defendant has satisfied the procedural requirements necessary to bring a compassionate release motion on his own behalf. § 3582(c)(1)(A). Because Defendant's motion for compassionate release is properly before the Court, the Court must determine whether Defendant has met his burden of proving he is entitled to a sentence reduction under § 3582(c)(1)(A). *See United States v. Jones,* 836 F.3d 896, 899 (8th Cir. 2016) (the movant bears the burden of proving he is entitled to a sentence reduction). A defendant seeking a sentence reduction must establish that "extraordinary and compelling reasons

2

warrant the reduction" and "[he] is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." U.S.S.G. § 1B1.13. These requirements derive from the Sentencing Commission's Policy Statement ("Policy Statement") on sentencing reductions under § 3582(c)(1)(A).

The Policy Statement further clarifies that "extraordinary and compelling reasons" encompasses only small, specific sets of circumstances. U.S.S.G. § 1B1.13, cmt. n.1(A). Namely, there are three recognized circumstances that may facilitate an inmate's early release: "(a) 'a medical condition'—specifically, 'a terminal illness' or a condition that 'substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover'; (b) 'age'—starting at age 65; and (c) 'family circumstances.'" *United States v. Calogero*, No. 18-203, at 4-5 (citation omitted).[1]

Defendant does not provide evidence, nor does he argue, that he fits into any established category that would entitle him to compassionate release. Rather, Defendant argues that the risk of contracting Covid-19 while incarcerated, combined with his medical issues, is sufficient to meet the standard for compassionate release.

---

[1] The Court notes that there is some dispute over whether the Sentencing Commission's Policy Statement remains binding in light of the statutory changes enacted by the First Step Act. *See Dillon v. United States,* 560 U.S. 817, 830 (2010) (holding that the Policy Statement is binding when evaluating sentence reduction requests under Section 3582); *cf. United States v. Perdigao*, No. 2:07-cr-00103 (E.D. La. Apr. 2, 2020) (Doc. No. 237 at 5) (finding that the policy statement is no longer dispositive). The Court finds it is not necessary to decide this issue at this time, as at the very least the Policy Statement remains instructive. *See United States v. LeBlanc,* 2020 WL 2331690 (E.D. La. May 11, 2020); *Perdigao*, No. 07-cr-103 (although not dispositive, the Policy Statement remains instructive.).

As stated above, Defendant now alleges that he was diagnosed with a neurofibroma in 2012. Defendant has not provided the Court with any medical records supporting this claim. However, assuming Plaintiff indeed suffers from neurofibroma, it is a type of nerve tumor that is usually benign, and which usually causes no or mild symptoms.[2] Moreover, this condition is not one of the conditions identified by the CDC as increasing a person's risk for developing serious illness from COVID19.[3] Thus, Plaintiff's alleged neurofibroma is not an extreme and compelling circumstance warranting compassionate release.

Defendant also alleges that he suffers from shortness of breath due to his prior COVID-19 infection. The CDC has reported that many patients who recover from COVID-19 continue to suffer some symptoms for weeks or "even months after recovery from acute illness," including shortness of breath.[4] However, "more serious long-term complications," such as lung function abnormalities, "appear to be less common."[5] When Defendant complained of shortness of breath following his COVID-19 infection, he was prescribed an albuterol inhaler and was taken for a chest x-ray. (Rec. Doc. 546-1 at 4). The x-ray showed that Defendant has "normal lung volumes," his "lungs are clear," and there is "no acute airspace disease or pulmonary edema."

---

[2] *See* MAYO CLINIC, *Neurofibroma*, https://www.mayoclinic.org/diseases-conditions/neurofibroma/cdc-20352978 (last visited Dec. 23, 2020).

[3] *See* CTRS. FOR DISEASE CONTROL & PREVENTION, *Coronavirus Disease 2019 (COVID-19): People with Certain Medical Conditions*, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html?CDC_AA_refVal=https%3A%2F%2Fwww.cdc.gov%2Fcoronavirus%2F2019-ncov%2Fneed-extra-precautions%2Fgroups-at-higher-risk.html (last visited Dec. 23, 2020).

[4] *See* CTRS. FOR DISEASE CONTROL & PREVENTION, *Coronavirus Disease 2019 (COVID-19): Long-Term Effects of COVID-19*, https://www.cdc.gov/coronavirus/2019-ncov/long-term-effects.html (last visited Dec. 23, 2020).

[5] *See id.*

(*Id.* at 24). Since Defendant's x-ray showed no signs of long-term lung damage, the Court finds that his alleged shortness of breath does not amount to a serious and compelling medical condition warranting compassionate release.

Finally, Defendant argues that he should be released due to his risk of reinfection with COVID-19. However, Defendant's medical records show that he was diagnosed as positive for COVID-19, received care, and fully recovered. (Rec. Doc. 526-1). This shows that the care and treatment Defendant is receiving while incarcerated is adequate to combat COVID-19 given his underlying conditions.

## CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED** that Defendant's *Motions for Compassionate Release* **(Rec. Docs. 543, 545, 547)** are **DENIED**.

New Orleans, Louisiana, this 6th day of January, 2021.

CARL J. BARBIER
UNITED STATES DISTRICT JUDGE